USCA1 Opinion

 

United States Court of Appeals

For the First Circuit

 

No. 02-1660

BOB COGAN; MITCH BEARDEN; SHAWN BRYAN; DAVID M. CONNELLY;

TREY CORISH; WADE CRAWFORD; JAMES CROVATO; THOMAS DAVIS;

MARC DURAND; JAMES GARRITY; JOHN GUCCIARDO; DINA HANAN; ANN

HARRIS; BOB HOLT; CHRIS HYBARGER; JEFF K. LAYMAN; PATRICK

MCCULLOM; TODD MCDONALD; DAVID M. MCLAUGHLIN; KEN MOORMAN;

MICHAEL MORONEY; TOM NAUTA; GARY NIELSEN; JOHN NOREN; PAUL

OLEYAR; DAVID O'SHEA; PATRICIA PURDY; BOB PYSKADLO; ROBERT

J. RUINEN; AMY STRAIGHT; BRIAN STUMM; MICHAEL WHALEN,

 Plaintiffs, Appellants,

v.

 

PHOENIX LIFE INSURANCE COMPANY; PHOENIX HOME LIFE MUTUAL

INSURANCE COMPANY GROUP SALES REPRESENTATIVE DEFERRED

COMPENSATION PLAN; BENEFIT PLANS COMMITTEE OF PHOENIX HOME

LIFE MUTUAL INSURANCE COMPANY,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]

Before

 Lynch, Circuit Judge,

Stahl, Senior Circuit Judge, 

and Howard, Circuit Judge.

 Chad A. Cloutier, with whom Joseph M. Cloutier and Joseph M.
Cloutier Associates, P.A., were on brief, for appellants.

 Seth W. Brewster, with whom Valerie A. Wright and Verrill &
Dana, LLP, were on brief, for appellees.

November 8, 2002

 STAHL, Senior Circuit Judge. Plaintiff-appellants Bob
Cogan et al. appeal from the district court's dismissal of their
complaint alleging violations of the Employee Retirement Income
Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and contract law
in connection with a deferred compensation plan. We affirm.

I. BACKGROUND

 Plaintiffs were formerly employed as sales
representatives of Phoenix Home Life Mutual Insurance Company
("Phoenix I"), now known as Phoenix Life Insurance Company, and are
participants in the Phoenix Home Life Mutual Insurance Company
Group Sales Representative Deferred Compensation Plan ("the Plan"). 
Defendant-appellees include Phoenix Life Insurance Company, Phoenix
Home Life Mutual Insurance Company, Phoenix Home Life Mutual
Insurance Company Group Sales Representatives Deferred Compensation
Plan, and the Benefit Plans Committee of Phoenix Home Life Mutual
Insurance Company. (1)

 Plaintiffs alleged the following facts in their
complaint: The Plan was established in 1997 as a non-qualified
employee benefit plan subject to ERISA. Its purpose was to provide
supplemental retirement benefits for a select group of sales
employees. The Plan provided for retroactive benefits for the
years 1994-96. From 1997 through 1999, Phoenix I credited each
plaintiff's participant account in the Plan with a benefit amount
calculated in accordance with Article 4.2 of the Plan. No funds
were actually set aside, segregated or held in trust for any
plaintiff. Rather, the aggregate amount of the accounts was and
remains part of the general liabilities of Phoenix I.

 Shortly before January 1, 2000, Phoenix I formed a
subsidiary called Phoenix American Life Insurance Company ("Phoenix
American"). Plaintiffs' employment was transferred to Phoenix
American, although this change was not disclosed to them at the
time. On or about December 13, 1999, GE Financial Assurance
Holdings, Inc. ("GEFA") announced that it had agreed to purchase
Phoenix American from Phoenix I. The sale closed on April 1, 2000. 
Plaintiffs alleged in their complaint that since that date, they
have been employed by GEFA. (2) 

 In the original Plan, section 5.2 specified the
conditions under which a participant could receive a benefit
payment:

 Payment of benefit amounts. . . shall be made
. . . solely upon the occurrence of the
following events and subject to the following
conditions:

 a. attainment of normal, early or deferred
retirement age . . .;

 b. upon the Participant's death if actively
employed by the Company at the date of death;

 c. upon the fifth anniversary of the
Participant's having been determined as having
a permanent and total disability. . . .; or

 d. upon elimination of the Participant's
position by the Company. 

The Plan also contained a clause permitting amendment:

 7.1. The Company shall have the right to amend
this Plan at any time and from time to time,
including a retroactive amendment. Any such
amendment shall become effective upon the date
stated therein, and shall be binding on all
Participants and Beneficiaries, except as
otherwise provided in such amendment;
provided, however that said amendment shall
not adversely affect benefits accrued, but not
yet payable as of the date of the amendment or
benefits payable to a Participant or
Beneficiary where the cause giving rise to
such benefit (e.g., retirement) has already
occurred. 

 On March 28, 2000, just before GEFA's purchase of Phoenix
American, the Benefits Plan Committee adopted the First Amendment
to the Plan. The First Amendment stated, in relevant part:

 1. Anything in Article IV of the Plan to the
contrary notwithstanding, all benefit accruals
under the Plan shall cease accrual of Benefits
effective as of March 31, 2000.

* * * *

 3. All other terms, provisions and conditions
of the Plan shall continue to apply except
that for purposes of Section 5.2 and 5.3
referenced [sic] to "Company", "Pension Plan"
and "Welfare Benefit Plan" shall be applied to
mean GE Financial Assurance Holdings, Inc. or
such subsidiary or affiliate thereof by which
a Participant is employed after the effective
date hereof . . . .

 4. The effectiveness of this Amendment is
contingent upon the occurrence of the closing
for the purchase of Phoenix American Life
Insurance Company by GE Financial Assurance
Holdings, Inc., and this Amendment shall be
void and of no force or effect if such closing
does not occur. 

 On or around November 7, 2001, plaintiffs filed a
complaint in the United States District Court for the District of
Maine asserting claims of ERISA violations, breach of contract and
promissory estoppel. On April 4, 2002, the magistrate judge issued
a recommended decision allowing defendants' motion to dismiss for
failure to state a claim. He held that plaintiffs' contract claim
was preempted by ERISA, and that defendants did not violate ERISA
by failing to provide plaintiffs with immediate payment of their
accrued benefits upon the sale of Phoenix American Life to GEFA. (3) 
The district court affirmed the recommended decision on May 6,
2002. (4)

II. DISCUSSION

 The district court dismissed plaintiffs' claims pursuant
to Rule 12(b)(6) of the Federal Rules of Civil Procedure. We
review the dismissal de novo, "accepting as true all well-pleaded
factual averments and indulging all reasonable inferences in the
plaintiff's favor." SEC v. SG Ltd., 265 F.3d 42, 46 (1st Cir.
2001) (citation and internal quotation marks omitted). "If the
facts contained in the complaint, viewed in this favorable light,
justify recovery under any applicable legal theory, we must set
aside the order of dismissal." Id. (citing Conley v. Gibson, 355
U.S. 41, 45-46 (1957); Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.
1996)).

 Plaintiffs contend in Count I of the complaint that
defendants violated ERISA by failing to provide plaintiffs with
"immediate lump-sum payment of their accrued benefits" upon the
sale of Phoenix American to GEFA. Specifically, they argue that
the sale of Phoenix American eliminated their positions by making
them employees of GEFA, thus triggering their right to receive
benefits pursuant to section 5.2(d) of the Plan. 

 Such payment is precluded by the First Amendment to the
Plan, which was promulgated under Phoenix I's express reservation
of right in section 7.1. See Kemmerer v. ICI Americas Inc., 70
F.3d 281, 288 (3d Cir. 1995) ("[N]othing in ERISA prohibits the
parties from contracting to limit the employer's right to amend or
terminate a plan."). The First Amendment took effect at the time
of the closing and amended section 5.2(d) to provide, in relevant
part, that payment of benefits becomes due only when plaintiffs'
positions are eliminated by GEFA, not by Phoenix Home Life. 
Plaintiffs do not allege that GEFA has eliminated their positions.

 Plaintiffs attempt to evade the effect of the First
Amendment to the Plan by contending that it violates ERISA's anti-cutback provision, 29 U.S.C. § 1054(g)(1). Section 1054(g)
provides, in relevant part:

 Decrease of accrued benefits through amendment
of plan

 (1) The accrued benefit of a participant under
a plan may not be decreased by an amendment of
the plan, other than an amendment described in
section 1082(c)(8) or 1441 of this title.

 

 (2) For purposes of paragraph (1), a plan
amendment which has the effect of--

 (A) eliminating or reducing an early
retirement benefit or a retirement-type
subsidy (as defined in regulations), or

 (B) eliminating an optional form of benefit,
with respect to benefits attributable to
service before the amendment shall be treated
as reducing accrued benefits. 

 The anti-cutback provision does not apply here, however,
as the Plan is unquestionably a "top hat" employee benefit plan. 
ERISA describes such a plan as "unfunded" and "maintained by an
employer primarily for the purpose of providing deferred
compensation for a select group of management or highly compensated
employees." Id. § 1101(a)(1). The Plan itself echoes this
statutory definition, stating that "[t]his Plan is an unfunded plan
for a select group of highly compensated Participants." Thus,
plaintiffs cannot dispute (and did not dispute below) that the Plan
is a top hat plan within the meaning of ERISA.

 Top hat plans are expressly exempted from ERISA's anti-cutback provision. Demery v. Extebank Deferred Comp. Plan (B), 216
F.3d 283, 287 (2d Cir. 2000). Section 1054(g) is contained in Part
2 (Participation and Vesting) of ERISA. The first section of Part
2, "Coverage," provides, in relevant part:

 This part shall apply to any employee benefit
plan . . . other than --

* * * *

 (2) a plan which is unfunded and is maintained
by an employer primarily for the purpose of
providing deferred compensation for a select
group of management or highly compensated
employees . . . .

29 U.S.C. § 1051(2) (emphasis added). Accordingly, we conclude
that the First Amendment did not violate ERISA's anti-cutback
provision, and affirm the dismissal of that claim. 

 Finally, plaintiffs argue that the district court erred
in dismissing Count II of their complaint, which purports to set
forth a breach of contract claim under federal common law,
apparently apart from ERISA. We are unaware of any such
independent cause of action. "[A] suit by a beneficiary to recover
benefits from a covered plan . . . falls directly under §
502(a)(1)(B) of ERISA, which provides an exclusive federal cause of
action for resolution of such disputes." Metropolitan Life Ins.
Co. v. Taylor, 481 U.S. 58, 62-63 (1987); see also Pilot Life Ins.
Co. v. Dedeaux, 481 U.S. 41, 54 (1987). If the breach of contract
claim for these top hat benefits arose under state law, it would be
preempted. The plaintiffs contend that top hat plans are a "rare
species" of ERISA plan and must be interpreted in keeping with
common law contract principles, citing Kemmerer, 70 F.3d at 288. 
Kemmerer makes clear, however, that this contract interpretation is
to be applied within the context of ERISA; it does not provide for
a separate common law contract claim. Id. Accordingly, we agree
with the district court that a separate cause of action for breach
of contract cannot lie. (5)

 Affirmed.

1. Defendant Benefit Plans Committee of Phoenix Home Life Mutual
Insurance Company is the administrator of the Plan. 
2. At oral argument, however, there was some suggestion that
plaintiffs were employed by Phoenix American, as a wholly-owned
subsidiary of GEFA.
3. The district court also dismissed Count III of the complaint,
holding that it failed to allege the necessary elements of a claim
of promissory estoppel. Plaintiffs do not revisit that issue on
appeal.
4. Copies of the Plan and the First Amendment were attached to
the complaint, and were properly considered by the district court
on the motion to dismiss. See Shaw v. Digital Equip. Corp., 82
F.3d 1194, 1220 (1st Cir. 1996) (court "may properly consider the
relevant entirety of a document integral to or explicitly relied
upon in the complaint . . . without converting the motion into one
for summary judgment").
5. We have considered plaintiffs' other arguments -- that the
court wrongly decided facts and failed to weigh the plan
administrator's conflict of interest -- and conclude that they do
not warrant reversal.